[Cite as *State ex rel. Fox v. Indus. Comm.*, 2026-Ohio-2922.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Phyllis J. Fox, | : | |
| Relator, | : | No. 24AP-140 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on July 30, 2026

**On brief:** *Dean R. Wagner*, *Vicent J. DeLorenzo*, and *Rachel K. Phipps*, for relator.

**On brief:** [*Andy Wilson*], Attorney General, and *Anna Isupova*, for respondent, Industrial Commission of Ohio.

**On brief:** *Brennan, Manna & Diamond, LLC*, and *Stephen E. Matasich*, for respondent, Metallus Inc., f.k.a. TimkenSteel Corporation.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DINGUS, J.

{¶ 1} Relator, Phyllis J. Fox, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order terminating her temporary total disability ("TTD") compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate, applying *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519, and

R.C. 4123.56(F), determined that because Fox retired on November 28, 2022, as of that date, she was not working as the direct result of reasons unrelated to her injury. The magistrate reasoned that Fox's inability to work following her retirement was not the direct result of her workplace injury because her retirement broke the causal relationship between that injury and loss of earnings. Thus, the magistrate recommends that we deny Fox's petition for a writ of mandamus.

{¶ 3} Fox and her employer, respondent, Metallus, Inc. ("Metallus"), have filed objections to the magistrate's decision. Fox sets forth the following objections:

> 1. The Magistrate Erred in Concluding That R.C. 4123.56(F) Authorizes Termination of Ongoing TTD Compensation.
>
> 2. The Magistrate Erred by Misapplying the Supreme Court's Decision in *AutoZone*.
>
> 3. The Magistrate Erred in Concluding That Relator's Acceptance of Her Pension Rendered Her Not Working for Reasons Unrelated to the Allowed Injury.
>
> 4. The Magistrate Erred by Failing to Address the Meaning of the Statutory Phrase "Otherwise Qualified."
>
> 5. The Magistrate Erred by Applying Reasoning That the Legislature Explicitly Superseded When It Enacted R.C. 4123.56(F).

(Sic passim.)

Conversely, Metallus presents a sole objection for our consideration:

> The Magistrate's Decision Erroneously Relies Upon Arguments Of Counsel, Rather Than Evidence Of Record, To Find That Relator Did Not Waive Her Arguments In Mandamus.

{¶ 4} In ruling on these objections, this court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 5} First, we address Metallus' objection to the magistrate's decision. Metallus contends that the magistrate erred in not finding that, for the purpose of seeking a writ of mandamus, Fox waived her arguments that R.C. 4123.56(F) is entirely inapplicable to the facts of this case, and that R.C. 4123.56(A) is the exclusive means to terminate TTD

compensation. As to this issue, the magistrate rejected Metallus' contention that Fox waived the argument that only R.C. 4123.56(A) (and necessarily not R.C. 4123.56(F)) applies to termination of ongoing TTD compensation. The magistrate noted that because there is no transcript of the hearing before the commission staff hearing officer ("SHO"), the record does not show that Fox waived these issues by not raising them before the commission. Consequently, the magistrate considered these arguments in reaching his decision. Metallus argues that the magistrate's reasoning was flawed because a party may not rely on the absence of evidence in the record to support its argument in mandamus. But it was Metallus that asserted the arguments were waived, and, therefore, Metallus had the burden of supporting this waiver claim. And the absence of a transcript of the hearing before the SHO precluded a finding that Fox did not present the purportedly waived arguments before the commission. Thus, Metallus' waiver argument essentially required a presumption that Fox did not make certain arguments before the SHO. The magistrate properly did not presume that the arguments had been waived. Accordingly, Metallus' sole objection is overruled.

{¶ 6} Next, we address Fox's objections. In her objections, Fox argues that the magistrate erred in misapplying R.C. 4123.56(F) and *AutoZone* to the facts of this case, erred in finding that her acceptance of her employer's retirement offer rendered her not working for reasons unrelated to the allowed injury, erred in not addressing her argument that the "otherwise qualified" language in R.C. 4123.56(F) independently required the continuation of her TTD compensation, and erred in applying reasoning that the General Assembly expressly superseded in its enactment of R.C. 4123.56(F). Collectively, Fox's objections challenge the magistrate's conclusion that because the commission properly applied R.C. 4123.56(F) to terminate her TTD compensation, she is not entitled to the requested writ of mandamus.

{¶ 7} A writ of mandamus is an extraordinary remedy that " 'command[s] the performance of an act which the law specifically enjoins as a duty.' " *State ex rel. Russell v. Klatt*, 2020-Ohio-875, ¶ 7, quoting R.C. 2731.01. To be entitled to a writ, Fox must establish (1) a clear legal right to the requested relief, (2) that the commission had a clear legal duty to provide such relief, and (3) she lacked an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ

of mandamus lies only when "there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties." *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 10. A writ of mandamus "may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 8} At issue in this mandamus action is the application of R.C. 4123.56, which addresses TTD compensation and states in pertinent part:

> (A) Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician, certified nurse-midwife, clinical nurse specialist, or certified nurse practitioner has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.
>
> . . .
>
> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(A) and (F).

{¶ 9} In March 2022, Fox sustained a workplace injury. On October 20, 2022, she underwent surgery for this injury and began to receive TTD compensation that day. Weeks later, she accepted an early full-pension retirement offer from Metallus, effective November 28, 2022. Metallus then requested the termination of Fox's TTD compensation, as of the date of retirement. The commission, applying R.C. 4123.56(F), granted that request and terminated Fox's TTD compensation. In this mandamus action, the

magistrate found that the Supreme Court of Ohio's decision in *AutoZone* directs the disposition.

{¶ 10} In *AutoZone*, the Supreme Court analyzed the meaning of R.C. 4123.56(F)—an issue of first impression—and applied that statute to the facts before it. As the magistrate noted, the Supreme Court summarized the requirements of this statute:

> R.C. 4123.56(F) is plain and unambiguous and conveys a clear and definite meaning. Superseding the voluntary-abandonment decisions under the third sentence of R.C. 4123.56(F) does not eliminate the requirement of a causal relationship between the allowed injury and an actual loss of earnings. R.C. 4123.56(F) replaces the voluntary-abandonment decisions with a "direct result" requirement, clarifying that the claimed loss of wages or inability to work must be directly caused by an "impairment arising from an injury" and not by "reasons unrelated to the allowed injury."

*AutoZone* at ¶ 37. The *AutoZone* employee suffered a workplace injury in June 2020 and worked light duty with his employer until he was terminated for violating work policies in September 2020. Then in November 2020, the employee had approved shoulder surgery, and he was unable to work while he recovered. The commission awarded the employee TTD compensation from the date of the surgery though the commission hearing date, and this court denied a requested writ to vacate that award. The Supreme Court reversed this court, finding that the employee was " 'not working' " as " 'the direct result of reasons unrelated to' " his injury. *Id.* at ¶ 39, quoting R.C. 4123.56(F). "Because [the employee] had already been terminated [when he had surgery in November 2020], his inability to work following his surgery was not the 'direct result of an impairment arising from an injury or occupational disease.' " *Id.* at ¶ 40, quoting R.C. 4123.56(F). Pursuant to this reasoning, the employee's termination severed the direct causal relationship between the allowed injury and any actual loss of earnings for the purpose of his eligibility for TTD compensation under R.C. 4123.56.

{¶ 11} Applying *AutoZone* here, the magistrate found that Fox's retirement on November 28, 2022, broke the causal relationship necessary for her to receive TTD compensation, and, thus, for the purpose of R.C. 4123.56(F), she was not working as "the direct result of reasons unrelated" to her injury, thereby requiring the termination of her TTD compensation. We disagree.

{¶ 12} Unlike the employee in *AutoZone*, whose employment was terminated weeks prior to his disabling surgery, Fox underwent surgery on October 20, 2022, and she was receiving TTD compensation when she accepted Metallus' full-pension retirement offer, effective November 28, 2022. Because Fox was already receiving TTD compensation for her impairment arising from her injury, her acceptance of the retirement offer did not break the direct causal relationship between her impairment arising from a workplace injury and her inability to work. This is the chronological reverse of what occurred in *AutoZone*. Just as the *AutoZone* employee's impairment from surgery did not become the direct cause of his wage loss, because he was already not working due to his termination, Fox's retirement did not become the direct cause of her wage loss because she was already unable to work as a result of the approved surgery. Therefore, we conclude that the magistrate erred in finding that, pursuant to R.C. 4123.56(F), Fox was no longer eligible for TTD compensation as of the effective date of her retirement with her employer, Metallus. On this basis, we sustain Fox's first, second, third, and fifth objections to the magistrate's decision. Fox's fourth objection to the magistrate's decision relates to the magistrate not expressly addressing the meaning of "otherwise qualified" in R.C. 4123.56(F). Considering our disposition of Fox's other objections, we overrule as moot her fourth objection.

{¶ 13} Following our independent review of this matter, we find that the magistrate properly determined the pertinent facts but did not appropriately apply the law to those facts. Therefore, we adopt the magistrate's findings of fact but not his conclusions of law. Metallus' sole objection to the magistrate's decision concerning the waiver of arguments lacks merit and is overruled. However, because we conclude that the magistrate erred in determining that, pursuant to R.C. 4123.56(F), Fox was not entitled to receive TTD compensation after her retirement with Metallus, we sustain Fox's first, second, third, and fifth objections. And in light of this disposition, we overrule as moot Fox's fourth objection. Accordingly, we grant Fox's request for a writ of mandamus ordering the commission to vacate its order terminating her TTD compensation.

*Objections sustained in part and overruled in part*;
*writ of mandamus granted.*

BEATTY BLUNT and JAMISON, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Phyllis J. Fox, | : | |
| Relator, | : | |
| v. | : | No. 24AP-140 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 21, 2025

*Dean R. Wagner*, *Vicent J. DeLorenzo*, and *Rachel K. Phipps*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

*Brennan, Manna & Diamond, LLC*, and *Stephen E. Matasich*, for respondent Metallus Inc., f.k.a. TimkenSteel Corporation.

IN MANDAMUS

{¶ 14} Relator, Phyllis Fox ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that terminated her temporary total disability ("TTD") compensation.

Findings of Fact:

{¶ 15} 1. On March 30, 2022, claimant sustained an injury in the course of and arising out of her employment with respondent Metallus Inc., f.k.a. TimkenSteel Corporation ("employer"). Her workers' compensation claim was allowed for fracture of the right radius with malunion.

{¶ 16} 2. In January 2022, the employer had begun offering lump-sum early full-pension payments for certain employees, and claimant was eligible to receive such based upon her years of service and age. After her injury in March 2022, claimant informed the employer's workers' compensation third-party administrator that she intended to accept the lump-sum pension offer and retire before December 1, 2022, in order to maximize her lump-sum pension payment.

{¶ 17} 3. After her injury, claimant was placed on work restrictions, the employer accommodated the restrictions, and claimant continued to work in a light-duty capacity until October 20, 2022.

{¶ 18} 4. On October 20, 2022, claimant underwent a distal radial osteotomy, distal ulna resection with stabilization, and carpel tunnel release, all approved surgeries under the claim.

{¶ 19} 5. Claimant's surgeon completed MEDCO-14 forms, which took claimant off work beginning the date of surgery, October 20, 2022, through March 31, 2023.

{¶ 20} 6. The employer began paying claimant TTD compensation on the date of the surgery, October 20, 2022.

{¶ 21} 7. After her surgery and while receiving TTD, claimant completed her application to accept the early full-pension offer from the employer. Her retirement was effective November 28, 2022.

{¶ 22} 8. On December 15, 2022, the employer filed a C-86 motion requesting termination of claimant's TTD compensation based upon her acceptance of the early full-pension offer, claiming claimant had voluntarily abandoned her employment.

{¶ 23} 9. The motion was heard before a district hearing officer ("DHO"). On January 31, 2023, the DHO issued an order granting the motion and terminating TTD compensation, effective November 27, 2022, finding the following: (1) claimant voluntarily retired from her job with the employer, effective November 28, 2022;

(2) claimant stopped working, as of November 28, 2022, as a direct result of reasons unrelated to the allowed injury in this claim; (3) thus, claimant is not eligible to receive TTD compensation, beginning November 28, 2022; and (4) the decision is based upon the December 13, 2022, affidavit from Tara Sidel; the December 14, 2022, statement from Sam Randazzo; and R.C. 4123.56(F). Claimant appealed.

{¶ 24} 10. The matter was heard before a Staff Hearing Officer ("SHO"). In a March 10, 2023, order, the SHO affirmed the DHO's order, finding the following: (1) TTD compensation is not payable subsequent to November 28, 2022; (2) claimant submitted retirement paperwork at the end of November 2022 based on financial considerations; (3) claimant testified at hearing that her choosing to retire was based on being able to receive in excess of $100,000 in a lump sum, which she rolled over into her own retirement account, and the one-year type of payout was unique for that year; and (4) the order is based on R.C. 4123.56(F), which provides that claimant was entitled to TTD compensation, as she was not employed subsequent to her last date of November 28, 2022, for reasons other than her injuries in this claim. Claimant appealed.

{¶ 25} 11. The commission refused further appeal in a March 31, 2023, order.

{¶ 26} 12. On February 23, 2024, claimant filed the present petition for writ of mandamus.

{¶ 27} 13. On October 7, 2024, claimant filed her merit brief.

{¶ 28} 14. On November 8, 2024, the employer filed its merit brief.

{¶ 29} 15. Also on November 8, 2024, the commission filed its merit brief.

{¶ 30} 16. On November 26, 2024, the Supreme Court of Ohio decided *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519 ("*AutoZone II*"), in which the court reversed our judgment in *State ex rel. AutoZone Stores, Inc. v. Indus. Comm. of Ohio*, 2023-Ohio-633 (10th Dist.) ("*AutoZone I*"). These cases address the application of R.C. 4123.56(F).

{¶ 31} 17. On December 6, 2024, claimant filed her reply brief, which addressed *AutoZone II*.

{¶ 32} 18. After granting the employer's motion for leave to file sur reply due to the recent decision in *AutoZone II*, the employer filed its sur reply on December 20, 2024.

Conclusions of Law and Discussion:

{¶ 33} The magistrate recommends that this court deny claimant's petition for writ of mandamus.

{¶ 34} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 35} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 36} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. R.C. 4123.56 provides, in pertinent part:

> (A) Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician, certified nurse-midwife, clinical nurse specialist, or certified nurse practitioner has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.
>
> . . .
>
> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated

> to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56.

{¶ 37} In the present case, claimant argues it was inappropriate for the commission to terminate TTD, effective November 27, 2022, because the commission relied upon R.C. 4123.56(F), which is only applicable to the initial determination for TTD compensation eligibility and not the termination of TTD compensation, which was at issue here. Claimant asserts that once an injured worker starts receiving TTD benefits, only certain events will result in termination of ongoing benefits under R.C. 4123.56(A), and none of those disqualifying events had occurred here: she has not been released to work, she had not returned to work, she had not been found to be at maximum medical improvement ("MMI"), and the employer had not offered her any light-duty work within her restrictions. Claimant challenges the employer's argument that she voluntarily abandoned her employment and immediately became ineligible for TTD compensation because she elected to take her pension and was not working for reasons unrelated to her injury. Claimant contends there was nothing about accepting her pension that prevented her from returning to work. Instead, the only reason she was unable to work as of the date of her retirement was the allowed injury, and she intended to return to work in some fashion when capable. Furthermore, claimant contends that the cases that created the doctrine of voluntary abandonment are no longer good law, as provided in R.C. 4123.56(F).

{¶ 38} The commission counters that it never addressed whether R.C. 4123.56(F) or 4123.56(A) is applicable to requests to terminate ongoing TTD compensation, and, as such, the commission should determine, in the first instance, whether R.C. 4123.56(F) is applicable in the same manner requests for a new period of TTD compensation are evaluated or whether termination of TTD compensation is solely evaluated under R.C. 4123.56(A).

{¶ 39} The employer responds by asserting that claimant has waived the argument that R.C. 4123.56(F) is inapplicable and R.C. 4123.56(A) is the exclusive means to terminate ongoing TTD compensation. The employer asserts that claimant did not raise

this argument before the commission and, therefore, is barred from raising the argument for the first time in mandamus. The employer contends that claimant's only argument before the commission was that R.C. 4123.56(F) is applicable, and the day this court released *AutoZone I*, claimant filed it with the commission and argued the applicability of *AutoZone I* and subsection (F). In the alternative, the employer asserts that the plain language of R.C. 4123.56(F) does not limit its application to an initial period of TTD, and "otherwise qualified" does not refer back to R.C. 4123.56(A).

{¶ 40} In her reply, claimant contends that she did not waive the argument that R.C. 4123.56(A), instead of subsection (F), applies to termination of ongoing TTD compensation. She asserts that she raised it before the SHO, although there is no transcript from this hearing.

{¶ 41} In its sur reply, the employer argues that *AutoZone II* is directly on point and requires that claimant's request be denied. The employer points to the finding in *AutoZone II* that there must be a cause-and-effect relationship between the industrial injury and an actual loss of earnings to qualify for TTD compensation, and, here, claimant had no expectation of employment or earnings after her voluntary retirement. The employer also reasserts that the plain language of R.C. 4123.56(F) contains no language limiting its application to initial requests for TTD.

{¶ 42} Initially, the magistrate declines to return to the commission the question of whether R.C. 4123.56(F) applies only to an initial determination of TTD compensation but not to situations involving ongoing TTD compensation. As this issue is purely legal and one of statutory interpretation, the meaning of the law must be considered de novo without any required deference to agency interpretation. *TWISM Enters., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 42-43. *See State ex rel. McDonald v. Indus. Comm. of Ohio*, 2021-Ohio-4494, ¶ 12 (10th Dist.), citing *National Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 2017-Ohio-8348, ¶ 14 (finding that statutory interpretation presents a question of law subject to a de novo standard of review). Therefore, as this court's review of the issue is de novo, it is not required that the commission first decide the issue.

{¶ 43} The magistrate also cannot find that claimant waived the argument that only R.C. 4123.56(A) applies to termination of ongoing TTD compensation. The employer

contends claimant did not raise this issue before the commission, but claimant asserts she raised it before the SHO. Because there is no transcript from this hearing, the magistrate has no way of knowing whether the issue was raised. Given the state of the record before the court, the magistrate cannot find claimant waived the issue.

{¶ 44} The first issue to be addressed is whether R.C. 4123.56(F) applies in determining whether ongoing TTD compensation should be terminated or applies only to an initial determination for TTD compensation eligibility. Claimant argues that R.C. 4123.56(F) applies only to an initial determination for TTD compensation eligibility, and R.C. 4123.56(A) applies exclusively to the termination of ongoing TTD compensation. Neither the parties nor the magistrate have found any case law addressing this issue.

{¶ 45} When interpreting statutory provisions, the "paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey*, 2004-Ohio-4960, ¶ 21, citing *State ex rel. United States Steel Corp. v. Zaleski*, 2003-Ohio-1630, ¶ 12. To discern legislative intent, a court must "first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 13, citing *Morrissey* at ¶ 21. The role of a court is "to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative." *National Lime & Stone Co.* at ¶ 14. " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' " *Id.* at ¶ 14, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 1996-Ohio-291.

{¶ 46} The magistrate finds that R.C. 4123.56(F) applies here. To accept the employer's argument that R.C. 4123.56(F) applies only to initial determinations of entitlement to TTD compensation, the magistrate would have to insert additional words into the statute, which is impermissible. *See Roe v. Planned Parenthood S.W.. Ohio Region*, 2009-Ohio-2973, ¶ 42, citing *Rice v. CertainTeed Corp.*, 1999-Ohio-361 (courts must give effect to the words used by the General Assembly). Looking at the specific language used in R.C. 4123.56(F), there is nothing in that provision that limits its application to initial determinations of TTD compensation. Furthermore, the language employed in subsection (F) supports the reading that its terms provide circumstances that

must be continually met to qualify for TTD compensation. The passage is written in the present tense. The present tense " 'refers to action . . . continuing in the present.' " *Wilhelms v. ProMedica Health Sys.*, 2023-Ohio-143, ¶ 23 (6th Dist.), quoting Robert C. Farrell, *Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions*, 40 Loy. U. Chi. L. J. 1, 19 (2008). Therefore, at the time of review, whether it be at the time of the initial determination of TTD compensation or at any point during the ongoing receipt of TTD compensation, the present circumstances must be in compliance with the requirements in subsection (F).

{¶ 47} Having determined that R.C. 4123.56(F) applies to a motion to terminate TTD compensation, the final issue concerns the application of R.C. 4123.56(F) to the current case based upon the Supreme Court of Ohio's holding in *AutoZone II*. In *AutoZone II*, the employee suffered shoulder injuries while employed for the employer. The employee worked light duty for the employer until he was terminated for violating work policies in September 2020. Two months later, in November 2020, the employee underwent shoulder surgery and was unable to work while he recovered. The commission awarded the employee TTD compensation from the date of the surgery through the commission hearing date, and this court affirmed. Upon appeal, the Supreme Court of Ohio reversed the decision of this court. The court found that despite superseding the voluntary-abandonment doctrine, R.C. 4123.56(F) still requires a causal relationship between the allowed injury and actual loss of earnings. The court explained:

> R.C. 4123.56(F) is plain and unambiguous and conveys a clear and definite meaning. Superseding the voluntary-abandonment decisions under the third sentence of R.C. 4123.56(F) does not eliminate the requirement of a causal relationship between the allowed injury and an actual loss of earnings. R.C. 4123.56(F) replaces the voluntary-abandonment decisions with a "direct result" requirement, clarifying that the claimed loss of wages or inability to work must be directly caused by an "impairment arising from an injury" and not by "reasons unrelated to the allowed injury."

*AutoZone II* at ¶ 17.

{¶ 48} Applying R.C. 4123.56(F) to the facts in *AutoZone II*, the court found that because the employer terminated the employee in September 2020 for violation of its employment policies, by the time he had his shoulder surgery in November 2020, the

employee was not working as "the direct result of reasons unrelated to" his injury. R.C. 4123.56(F). Thus, because the employee had already been terminated, his inability to work following his surgery was not the "direct result of an impairment arising from an injury or occupational disease." *See id.* Accordingly, the court concluded that the employee was not entitled to receive TTD compensation from the date of his shoulder surgery through the date of the hearing.

{¶ 49} The Supreme Court of Ohio's decision in *AutoZone II* guides the present case. Here, claimant sustained her workplace injury in March 2022. The employer accommodated claimant's work restrictions, and claimant continued to work in a light-duty capacity until October 2022. After her injury, claimant informed the employer that she intended to accept a lump-sum pension offer and retire before December 1, 2022. In October 2022, relator underwent approved surgeries under the claim. Claimant's surgeon completed MEDCO-14 forms, which took relator off work beginning the date of surgery through March 2023, and the employer began paying claimant TTD compensation on the date of the surgery. Claimant then completed her application to accept the early full-pension offer from the employer, and her retirement was effective November 28, 2022. Thereafter, the employer filed a motion requesting termination of claimant's TTD compensation.

{¶ 50} Applying *AutoZone II* to the present facts, because claimant retired on November 28, 2022, as of that time, claimant was not working as "the direct result of reasons unrelated to" her injury. R.C. 4123.56(F). In other words, claimant was not working as the direct result of her pre-planned retirement. Her retirement was unrelated to her surgeries and workplace injury. Thus, claimant's inability to work following her retirement was not the "direct result of an impairment arising from an injury or occupational disease." *See id.* Claimant's retirement broke the causal relationship between claimant's inability to work and any loss of earnings. For these reasons, claimant was not entitled to receive TTD compensation after the date of her planned retirement.

{¶ 51} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.